Filed 7/27/26  City of Long Beach v. Long Beach Civil Service Com. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CITY OF LONG BEACH,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>LONG BEACH CIVIL SERVICE COMMISSION,<br><br>        Defendant and Respondent;<br><br>DEDIER REYES,<br><br>        Real Party in Interest and Respondent. | B350812<br><br>(Los Angeles County Super. Ct. No. 24LBCP00406) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Affirmed.

Hanson Bridgett, Alfonso Estrada, Patrick Burns, David Casarrubias-González and Shandyn H. Pierce for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

The Karabian Law Firm and Benjamin W. Karabian for Real Party in Interest and Respondent.

_____

The City of Long Beach (the City) appeals from a judgment denying its petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5.[1]  The City dismissed Long Beach Police Department (LBPD) Officer Dedier Reyes from his employment after finding that Reyes falsified a police report and probable cause declaration, conducted an inadequate investigation, and failed to supervise a trainee.  After an evidentiary hearing, the Long Beach Civil Service Commission (the Commission) sustained the failure-to-supervise charge but found that the City failed to prove Reyes committed the other alleged misconduct.  The Commission reduced Reyes's dismissal to a suspension and ordered his reinstatement.  The City petitioned the trial court for a writ of mandate, alleging the evidence did not support the Commission's decision.  Exercising its independent judgment, the trial court denied the petition, finding the City failed to prove the Commission's decision was contrary to the weight of the evidence.

The City contends no substantial evidence supports the trial court's findings.  " 'The substantial evidence standard of review is generally considered the most difficult standard of

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

review to meet, as it should be, because it is not the function of the reviewing court to determine the facts.'" (*Caldera v. Department of Corrections and Rehabilitation* (2018) 25 Cal.App.5th 31, 38.) We conclude the City fails to meet its burden, under the substantial evidence standard of review, to show that *no* reasonable fact finder could make the trial court's findings. That a different fact finder might reasonably have found Reyes knowingly falsified documents and conducted an inadequate investigation is insufficient to satisfy the City's burden. We affirm.

## BACKGROUND

### A. Reyes arrested two suspects at a restaurant and inaccurately reported which suspect possessed a satchel containing a firearm and methamphetamine.

On February 15, 2018, Reyes (then a Field Training Officer) and his trainee, Officer David Salcedo, arrested Orlando Fonseca-Vargas and Maximiliano Medina at a restaurant in Long Beach. Reyes arrested Fonseca-Vargas for suspected possession of a firearm and methamphetamine found inside a satchel in the restaurant. He arrested Medina for suspected offenses concerning identification documents found in his wallet and methamphetamine found where he had sat in a police transport vehicle.

Within hours after the arrests, Reyes submitted a police report and a probable cause declaration. The officers did not have body-worn cameras. Days later, homicide detectives obtained surveillance video from inside the restaurant. Officers also took photographs of the restaurant's interior and exterior.

## 1. Surveillance video showed that Medina possessed a satchel and left it inside the restaurant before Reyes entered and retrieved the satchel.

The surveillance video showed that Medina wore a satchel over his shoulder inside the restaurant. Fonseca-Vargas entered the restaurant and appeared to engage in a cash transaction with Medina (the video had no audio).[2]

Fonseca-Vargas exited the restaurant, followed by Medina. Around 40 seconds later, Medina (still wearing the satchel) re-entered the restaurant, followed by Fonseca-Vargas. Fonseca-Vargas stood at the counter and waited for a cashier to arrive. Medina walked to an area at the back of the restaurant, discarded the satchel by the back wall (in a location not visible on the cameras), and exited the restaurant. A photograph of the back area of the restaurant showed a black crate against the wall, in which Reyes undisputedly found the satchel.

Around 10 seconds after Medina exited, Reyes's and Salcedo's police vehicle parked in front of the restaurant. Soon after, Reyes entered the restaurant and a cashier approached Fonseca-Vargas at the counter. Reyes spoke with Fonseca-

---

[2] Fonseca-Vargas and Medina are the same age and have the same hair and eye color. They are approximately the same height (Medina is one inch taller). On the day of the arrests, both men wore sweaters and backward baseball caps; Fonseca-Vargas's clothing was burgundy and green, while Medina's was black. Fonseca-Vargas was approximately 70 pounds heavier than Medina.

4

Vargas and an unidentified man while Fonseca-Vargas placed an order with the cashier.[3]

After Fonseca-Vargas completed his interaction with the cashier and turned to Reyes, Reyes appeared to direct Fonseca-Vargas outside the restaurant, and Fonseca-Vargas exited. Reyes exited around one minute after Fonseca-Vargas.

Around eight minutes later, Reyes re-entered the restaurant. He spoke with the cashier, who appeared to gesture with her head towards the area where Medina had left the satchel. Reyes walked to that area and bent down, appearing to examine the satchel. Reyes exited the restaurant.

Around one minute later, Reyes re-entered, retrieved the satchel, spoke with the cashier and another employee, and exited with the satchel.

### 2. Reyes's police report and probable cause declaration inaccurately stated that Fonseca-Vargas (not Medina) possessed the satchel. Reyes did not record witness information but reported that Salcedo requested video from a manager.

Reyes's police report stated that he and Salcedo patrolled the area of Anaheim Street and Cedar Avenue in Long Beach, which area Reyes knew was controlled by the East Side Longos (ESL) gang. Reyes saw two men "loitering" in front of a restaurant and immediately recognized them from prior contacts

---

[3] Reyes testified that he attempted to convince the unidentified man to exit the restaurant for consensual questioning because he suspected the man could be associated with Fonseca-Vargas and Medina, but he abandoned the attempt—without detaining the man—after the man denied any association and refused to talk further.

5

as Fonseca-Vargas, an ESL member on parole for criminal threats, and Medina, an ESL member on probation for an unspecified weapons charge. Each man was subject to "full search conditions."

The report—which Reyes wrote before viewing the surveillance video—inaccurately stated that Fonseca-Vargas (not Medina) was carrying a Louis Vuitton satchel or "man purse."[4] Reyes reported that he made a U-turn to contact the two men and observed Fonseca-Vargas enter the restaurant with the satchel while Medina remained outside.

Reyes's report continued: "I walked in the restaurant and my partner detained [Medina] in front of the business. [Fonseca-Vargas] placed the bag in an open black crate on the south wall." As noted, the video showed that Medina discarded the satchel and exited the restaurant before Reyes's police vehicle parked in front.

Reyes reported that he allowed Fonseca-Vargas to order food at the counter but advised him that Reyes was detaining him and would conduct a parole search of his person and property. The report inaccurately stated that Reyes "walked [Fonseca-Vargas] outside" (as noted, the video showed Reyes appeared to direct Fonseca-Vargas outside but exited one minute after him).

Reyes reported that he re-entered the restaurant to investigate the satchel, which was open and contained a firearm in plain view. He later determined that the satchel also contained methamphetamine. After delivering *Miranda*

_____

[4] Reyes reported that Fonseca-Vargas had a neck tattoo that looked "similar to the Louis Vuitton logo (like on the satchel)."

6

advisements, Reyes separately questioned Fonseca-Vargas and Medina, each of whom denied knowledge of the firearm. Fonseca-Vargas also denied possession of the satchel and any association with Medina. Medina said that he and Fonseca-Vargas had been together in front of the restaurant to order food, and that Fonseca-Vargas "was carrying the brown satchel in question but did not know what was inside it."[5]

Reyes did not record any witness statements or contact information. He reported, however, that Salcedo "contacted the employees at the restaurant and requested video from the manager."

Salcedo prepared a supplemental report, which Reyes reviewed before Salcedo submitted it. The supplemental report did not mention Salcedo's request for video. It primarily concerned Medina's suspected offenses, which were unrelated to the satchel. It inaccurately stated, however, that Fonseca-Vargas (not Medina) possessed a bag outside the restaurant.

Similarly, Reyes's probable cause declaration inaccurately stated that Fonseca-Vargas (not Medina) "was observed walking into a restaurant with a man purse in his possession." The declaration did not address what Fonseca-Vargas did with the bag after entering the restaurant or where Reyes found the bag. It stated that a search of the bag uncovered a firearm and methamphetamine.[6]

_____

[5] Another officer, who responded to Reyes's call for assistance, reported that Medina claimed the satchel and firearm belonged to Fonseca-Vargas.

[6] In December 2021, the Los Angeles County District Attorney charged Reyes with perjury (based on his probable

7

**B.** **The City dismissed Reyes based on its findings that he falsified his police report and probable cause declaration, conducted an inadequate investigation, and failed to supervise Salcedo.**

Six days after the arrests (on February 21, 2018), homicide detectives obtained a copy of the restaurant's surveillance video from a manager who had not been present during the arrests.[7] The detectives determined there was insufficient evidence to seek charges against Fonseca-Vargas. Neither Fonseca-Vargas nor Medina was charged in connection with the satchel's contents.

LBPD immediately initiated an investigation into suspected misconduct by Reyes. Five months later (in July 2018), two sergeants from LBPD's Internal Affairs Office interviewed Reyes, who viewed the surveillance video for the first time during the interview. Reyes acknowledged that the video contradicted his police report's statement that Fonseca-Vargas (not Medina) possessed the satchel. He maintained that until he viewed the video, he honestly (but mistakenly) recalled seeing Fonseca-Vargas enter the restaurant with the satchel.

Reyes also acknowledged that, as shown in the video, he entered the restaurant *after* Medina discarded the satchel in a crate. He claimed he did not intend to state otherwise in his report. When asked why his report stated "I walked in the

cause declaration) and filing a false police report. A jury acquitted Reyes.

[7] Before the manager provided the video to the detectives, she showed them screenshots. The record contains conflicting evidence regarding whether detectives viewed the screenshots on February 16 (the day after the arrests) or February 20, 2018.

8

restaurant" *before* the report stated Fonseca-Vargas "placed the bag in an open black crate," Reyes responded, "If I wrote it, it's because that was . . . the best of my recollection at that point when I'm writing my report. . . . [I]f I made a mistake on the report, it wasn't done purposely . . . to falsify anything."

More than two years after his Internal Affairs interview (in November 2021), LBPD removed Reyes from active duty. In February 2022, the City dismissed Reyes from his employment, based on its findings sustaining four administrative charges of misconduct. First, the City found that Reyes conducted an inadequate investigation before arresting Fonseca-Vargas and Medina "by failing to contact, obtain and record statements from restaurant employees and customers regarding the Louis Vuitton bag recovered in the restaurant and . . . to obtain information in order to acquire a copy of the restaurant's close circuit/video recording(s)."[8] Second, the City found that Reyes filed a false police report "by stating that Fonseca[-Vargas] was carrying a brown Louis Vuitton bag over his right shoulder, that Fonseca carried the bag into the . . . restaurant, that Fonseca placed the bag in an open black crate on the south wall, and that Officer Reyes walked Fonseca outside to the police car." Third, the City found that Reyes filed a false probable cause declaration by stating in the declaration that Fonseca-Vargas was observed walking into the restaurant with a bag in his possession.

---

[8] The City's notice of dismissal found that Reyes's inadequate investigation violated certain sections of the LBPD Manual and the City's Civil Service Rules and Regulations. The record does not contain a copy of those sections or any evidence describing their provisions. Neither party has requested judicial notice of those sections.

Finally, the City found that Reyes failed to fulfill his duties as a Field Training Officer by allowing Salcedo to submit an inaccurate police report.

The City's notice of dismissal observed that Reyes had received two prior suspensions. First, Reyes received a 10-day suspension based on a January 2009 incident in which Reyes, while off duty, engaged in inappropriate conduct by becoming involved in a dispute with a woman that resulted in a response from the Montebello Police Department, and "was unprofessional to" a responding officer.[9] Second, Reyes received a 16-day suspension based on several incidents in August and September 2014 of negligence and insubordination regarding administrative matters (e.g., delaying filing a use-of-force report until his next work shift).

The City subsequently presented evidence that since 2010, Reyes had been subject to 14 use-of-force reviews (which reviews were not triggered by complaints) and 11 citizen complaints. LBPD found all of Reyes's uses of force to be within policy and did not sustain any of the citizen complaints.[10]

---

[9] Although the City asserts that Reyes's first suspension concerned domestic violence, the record contains no information regarding his relationship to the woman involved in the incident or the nature of their dispute.

[10] The record does not support the City's assertions that Reyes was "the defendant in a lawsuit brought by a member of the public, alleging dishonesty, in March 2018," and that Reyes "had multiple misdemeanor cases asserted against him . . . ." In support of the first assertion, the City cites only a question by its counsel to which a relevance objection was sustained and no answer was given. In support of the second, the City cites only

**C.	The Commission reduced Reyes's dismissal to a suspension and ordered him reinstated based on its findings that the City failed to prove Reyes committed most of the charged misconduct.**

In 2024, the Commission held an evidentiary hearing on Reyes's administrative appeal from his dismissal. The parties agreed that under LBPD Manual section 3.3, the charges that Reyes falsified his police report and probable cause declaration required a finding that he *knowingly* entered false information.[11]

Before the Commission, Reyes testified he "had no ax to grind" as to either Fonseca-Vargas or Medina. He acknowledged that the surveillance video contradicted his police report's statements that Fonseca-Vargas (not Medina) possessed the satchel and that Reyes walked Fonseca-Vargas out of the restaurant (rather than directing Fonseca-Vargas to exit first), as well as his report's implication that he entered the restaurant before the satchel was placed in a crate. Reyes testified, however, that he truthfully reported his mistaken recollection at the time he wrote the report (i.e., he did not *knowingly* report false information). Salcedo testified that Reyes did not instruct

its counsel's closing argument, which was not evidence and does not appear to refer to any misdemeanor cases "asserted against" Reyes.

[11] A City witness testifying for the Chief of Police confirmed that the Chief relied on LBPD Manual section 3.3 in sustaining the dishonesty charges against Reyes. Another witness for the City quoted the section as follows: " 'Employees are required to be truthful at all times. Employees shall not *knowingly* falsify any official report or enter or cause to be entered any inaccurate false or improper information on the books, records, or registers of the Department.' " (Italics added.)

him to identify Fonseca-Vargas as the suspect in possession of the satchel or otherwise include false information in his supplemental report.

Regarding his investigation, Reyes testified that he directed Salcedo to question the restaurant's employees about obtaining the surveillance video. Salcedo testified that the cashier informed him that the video cameras worked but only a manager had access. Salcedo obtained the manager's name and phone number from the cashier but did not include the manager's information in his supplemental report.

Salcedo informed Reyes the employees had said they would contact a manager to obtain the video. Reyes then personally spoke to the employees, who informed him that only the manager had access to the video. As noted, Reyes's police report stated that Salcedo "contacted the employees at the restaurant and requested video from the manager." The City's witness testifying for the Chief of Police acknowledged that detectives obtained the video from the manager six days after the arrests (and viewed screenshots one day earlier) without "hardship," i.e., through a "straightforward" process.

Reyes asked the employees if they had seen who discarded the satchel, and they said they had not. Reyes did not include the employees' statements in his report because it was apparent to him that the employees felt uncomfortable being witnesses due to fear of retaliation.[12] Later, the employees similarly

_____

[12] Reyes's police report stated: "The East Side Longo gang controls the area and terrorizes local business by means of intimidation. I have personally made numerous contacts with members of the gang at this location, . . . [who] routinely loiter in

12

informed detectives that they had not seen who discarded the satchel.

Reyes and Salcedo also questioned restaurant customers. A customer informed Salcedo that he had not seen anything. Reyes did not recall what the customers said.

The Commission found that the City failed to prove by a preponderance of the evidence that Reyes conducted an inadequate investigation or falsified his police report or probable cause declaration. The Commission noted that it considered, among other evidence, Reyes's testimony that he questioned the employees about who discarded the satchel and whether the video was available, and that he truthfully reported his recollection at the time he submitted his report.

The Commission upheld the City's finding that Reyes failed to fulfill his duties as a Field Training Officer by allowing Salcedo to submit an inaccurate police report. The Commission reduced Reyes's dismissal to a four-month unpaid suspension and ordered him reinstated.

**D. The City petitioned for a writ of mandate to set aside the Commission's adverse findings. The trial court denied the petition, finding the City failed to prove the findings were contrary to the evidence.**

The City petitioned the trial court for a writ of administrative mandate, alleging the Commission abused its discretion by reinstating Reyes because the evidence did not support the Commission's findings against the City.

---

front of the business, interfering with patrons coming and going. The business is intimidated by the gang but they do not call the police to report it because of fear of retaliation."

Exercising its independent judgment, the trial court found that the City failed to prove the Commission's findings were contrary to the weight of the evidence. Regarding the charge that Reyes conducted an inadequate investigation, the trial court found that the evidence expressly considered by the Commission—including Reyes's testimony that he questioned the restaurant's employees about who discarded the satchel and whether the video was available—supported its finding. The court also observed that the video showed Reyes spoke with the employees and that no evidence indicated the employees said anything that would have been helpful to record in his written report.

Regarding the charges that Reyes falsified his police report and probable cause declaration, the court observed, "If there is one thing that has changed my view of evidence in the last 22 years on the bench, it is this notion: that people often honestly misremember what happened." The court implicitly credited Reyes's testimony that he honestly reported his mistaken recollection at the time he submitted his report and probable cause declaration. The court reasoned, in part, that the video supported a finding that Reyes briefly saw Fonseca-Vargas next to Medina (wearing the satchel) outside the restaurant, leading Reyes to mistakenly recall that Fonseca-Vargas was the suspect who entered the restaurant with the satchel. The court further reasoned that the evidence identified no apparent motive for Reyes to knowingly lie about which suspect possessed the satchel, whether Reyes saw the suspect discard the satchel (after having seen the suspect enter the restaurant with the satchel, rendering the satchel's discovery inevitable), or whether Reyes walked Fonseca-Vargas out of the restaurant.

14

The trial court concluded: "The evidence before the Court compels the finding that any inconsistencies between Reyes' report and the [facts uncovered by the] subsequent Internal Affairs investigation were mere inconsistencies, not intentionally false statements. The evidence also compels the finding that the Court should defer to [the Commission's] initial decision regarding whether Reyes did not adequately conduct the investigation . . . ."

The trial court entered judgment denying the City's petition. The City filed a timely notice of appeal.

## DISCUSSION

### A. Standard of review

Administrative mandamus lies to correct "any prejudicial abuse of discretion." (§ 1094.5, subd. (b).) "Abuse of discretion is established if . . . the findings are not supported by the evidence." (*Ibid*.) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (§ 1094.5, subd. (c).) "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

"[W]hen the superior court has [independently] reviewed the evidence and made findings, the role of the appellate court is

15

limited.  This limited scope of review requires the appellate court to sustain the superior court's findings if substantial evidence supports them.  In reviewing the evidence[,] we resolve all conflicts in favor of the party prevailing in the superior court and give that party the benefit of every reasonable inference.  'When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court.' " (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46; accord, *Bedard v. City of Los Angeles* (2024) 106 Cal.App.5th 442, 454 (*Bedard*).) " ' " ' "Evidence is substantial if *any* reasonable trier of fact could have considered it reasonable, credible and of solid value." ' " ' " (*Bedard*, at p. 454, italics added.)  " 'Under th[e substantial evidence] standard, "when the trier of fact has . . . concluded the party with the burden of proof did not carry the burden and that party appeals, . . . ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." ' " ' " (*Jogani v. Jogani* (2026) 118 Cal.App.5th 823, 858, fn. 7 (*Jogani*).)

### B. Substantial evidence supports the trial court's finding that the City did not prove Reyes knowingly falsified his police report or his probable cause declaration.

The City does not dispute that, as the parties agreed below, the charges that Reyes falsified his police report and probable cause declaration required a finding that he *knowingly* entered false information.  Reyes testified that he did not report inaccurate information knowingly, but instead honestly reported his mistaken recollection at the time.  He further testified he "had no ax to grind" as to either Fonseca-Vargas or Medina.  The

trial court implicitly credited Reyes's testimony that he had no motive to lie and that he instead made honest mistakes.  For the reasons explained below, we conclude that the trial court was entitled to credit that testimony.

The City argues that Reyes's testimony that he made honest mistakes rather than knowing misrepresentations is not "reasonable or credible" and thus does not constitute substantial evidence supporting the trial court's finding that the City failed to prove the dishonesty charges.  We disagree.  In essence, the City asks us to reweigh Reyes's credibility, which we may not do.

"[I]n a bench trial, the trial court is the 'sole judge' of witness credibility.  [Citation.]  The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so.  [Citation.] . . . Credibility determinations thus are subject to extremely deferential review." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 (*Schmidt*).) " ' " 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]  Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 750.)

Here, the City argues that the video and photographs from the restaurant establish that it was physically impossible for Reyes to have seen Medina place the satchel in a crate on the restaurant's south wall (at a time when the video shows Reyes

17

was outside the restaurant), thereby establishing that Reyes knowingly lied that he saw Fonseca-Vargas place the satchel there. Reyes's police report, however, did not expressly state that he saw Fonseca-Vargas place the satchel in the crate. Although the report inaccurately implied as much, substantial evidence supports the trial court's finding that Reyes, having seen Medina (standing next to Fonseca-Vargas) enter the restaurant with the satchel and having soon after discovered the satchel in the crate, either: (1) honestly misremembered having seen Fonseca-Vargas place the satchel there; or (2) honestly intended to communicate only that he *deduced* Fonseca-Vargas had placed the satchel there. Reyes's probable cause declaration said nothing about having observed Fonseca-Vargas place the satchel in the crate—suggesting that Reyes believed such an observation was immaterial to the existence of probable cause to arrest Fonseca-Vargas for possession of the satchel's contents.

Further, Reyes's report stated that Salcedo requested video from the restaurant's manager. That information would suggest to future readers that they could obtain surveillance video—the same video that could (and did) reveal Reyes's misidentification of Fonseca-Vargas as the suspect who possessed the satchel and the falsity of his implication that he saw the satchel's placement in the crate. The trial court could reasonably conclude that Reyes would not knowingly falsify his report while simultaneously reporting information that risked exposing the falsehoods.

We note that the trial court's evaluation of Reyes's credibility was based in part on the court's belief that "people *often honestly* misremember what happened." (Italics added.) That a different fact finder might reasonably have disbelieved

Reyes does not warrant reversal of the judgment. (See *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329 ["That the dependency court reasonably could have assessed [a witness's] credibility less favorably or that our court could reasonably make a different assessment of credibility is not sufficient grounds for reversal"]; *Schmidt*, *supra*, 44 Cal.App.5th at p. 582 ["Our job is only to see if substantial evidence exists to support the verdict in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events"].)

For the same reason, we are unpersuaded by the City's reliance on evidence that Reyes had been trained not to include deductions in his report, and that he has offered different explanations for his report at different times. That the City's evidence could lead a reasonable fact finder to conclude that Reyes knowingly falsified his report and declaration does not satisfy that City's burden to show that *no* reasonable fact finder could reach the trial court's (and the Commission's) contrary conclusion. (See *Bedard*, *supra*, 106 Cal.App.5th at p. 454; *Schmidt*, *supra*, 44 Cal.App.5th at p. 582.)

In short, we conclude substantial evidence supports the trial court's finding that, as the Commission had found, the City did not prove Reyes knowingly falsified his police report or his probable cause declaration.

## C. Substantial evidence supports the trial court's finding that the City did not prove Reyes conducted an inadequate investigation.

The City argues that no substantial evidence supports the trial court's finding that, as the Commission had found, the City failed to meet its burden to prove Reyes conducted an

19

inadequate investigation. We disagree. The evidence does not compel a finding in the City's favor as a matter of law. (See *Jogani*, *supra*, 118 Cal.App.5th at p. 858, fn. 7.)

The City cites no evidence establishing an investigatory standard by which the Commission and the trial court should have assessed the adequacy of Reyes's investigation. The City argues Reyes's investigation was inadequate because he failed to report his interaction with an unidentified man whom Reyes did not detain but suspected of association with Fonseca-Vargas and Medina (which association the man denied). The City does not articulate how Reyes's investigation was made inadequate by his failure to report an interaction which appears to have no relevance to the investigation. The evidence indicated that LBPD trained Reyes to report all *relevant* information that future readers would "need to do their jobs," but to make his reports "[c]oncise." The trial court reasonably could have found that the interaction was irrelevant and that Reyes properly omitted it from his report in the interest of brevity.

The City further argues Reyes's investigation was inadequate because he failed to obtain a copy of the restaurant's surveillance video (which was unavailable on the day of the arrests). Substantial evidence, however, supports a reasonable inference that shortly after the arrests, when homicide detectives took control of the investigation, LBPD policy precluded Reyes from further investigation. Further, the administrative charge did not fault Reyes for failing to obtain a copy of the video—rather, it alleged he failed to obtain "information in order to acquire" a copy.

The evidence does not compel a finding that Reyes failed to obtain such information. The restaurant's employees informed

20

Reyes that the video cameras worked but were accessible only by a manager who was not then present. At Reyes's direction, Salcedo obtained the manager's contact information and informed Reyes the employees had said they would contact the manager to obtain the video.

The City cites a lieutenant's testimony that Reyes should have documented that the video was not immediately available. Reyes's report implicitly communicated that information, however, by stating that Salcedo contacted the restaurant's employees and requested video from a manager.

That Reyes failed to ensure Salcedo included the manager's contact information in Salcedo's supplemental report does not compel, as a matter of law, a finding that Reyes conducted an inadequate investigation. The City's lead witness acknowledged that even without the manager's contact information, detectives had no difficulty in obtaining the video from the manager six days later.

Finally, the City argues that Reyes's investigation was inadequate because he failed to record witness statements. The restaurant's employees, however, informed Reyes (as they later informed detectives) that they had not seen who discarded the satchel. A customer similarly informed Salcedo that he had not seen anything. Although Reyes did not recall the conversations he had with several people in the restaurant, the trial court observed that no evidence indicated that recording the witnesses' statements (that they did not see who discarded the satchel) in the police report would have been helpful to the investigation. In the absence of such evidence, the trial court reasonably found that the City did not prove that the omission of these particular witness statements rendered Reyes's investigation inadequate.

21

In sum, we conclude substantial evidence supports the trial court's finding that, as the Commission had found, the City did not prove Reyes conducted an inadequate investigation.

**D.   The trial court did not err by deeming Reyes's prior discipline irrelevant to its decision.**

In the trial court, the City's opening brief described evidence of Reyes's two prior suspensions, as well as the number of use-of-force reviews and citizen complaints involving Reyes (which resulted in no discipline).  The trial court's ruling noted that "a significant portion of Petitioner's opening brief is dedicated to delineating Reyes' past indiscretions," and stated the information was "wholly irrelevant to the instant inquiry of whether he falsified the February 15, 2018, police report . . . and whether he did not conduct a complete investigation of the incident in question."[13]

The City argues that the trial court prejudicially erred by deeming evidence of Reyes's prior discipline, use-of-force reviews, and citizen complaints irrelevant.  We disagree.

The City fails to address the undisputed evidence that LBPD found all of Reyes's uses of force to be within policy and did not sustain any of the citizen complaints against him.  That LBPD reviewed Reyes's uses of force and citizens made

_____

[13] The trial court's ruling further stated:  "Petitioner proffering this information permits the inference that the reprimanding of Reyes stems from a prior intent to reprimand based upon perceived past indiscretions, and the February 15, 2018, incident, was used as pretext."  Citing that language, the City asserts, in passing, that the trial court drew an adverse inference against it.  The City does not, however, argue that the trial court's alleged inference constituted prejudicial error.

22

complaints against him—without resulting in any adverse findings—is irrelevant to the administrative charges.

Reyes did receive two prior suspensions for sustained findings of misconduct.  The City argues that the trial court erred by failing to consider Reyes's prior misconduct as relevant evidence regarding the likelihood that his alleged dishonesty will recur.

We disagree.  As the City observes, we and other courts have identified the likelihood that a public employee's misconduct will recur as a relevant secondary factor in determining whether an administrative agency abused its discretion in setting the penalty for a *sustained* finding of misconduct.  (E.g., *County of Los Angeles v. Civil Service Com. of County of Los Angeles* (2019) 40 Cal.App.5th 871, 880; see also *id.* at pp. 878, 880-881 [agency's decision to reduce dismissal to suspension was unsupported by agency's undisputed findings that sheriff's deputy lied about colleague's unreasonable use of force].)  Here, the trial court had no occasion to consider the potential penalty for a sustained finding of dishonesty because the Commission and the trial court found that the City failed to prove Reyes committed the charged dishonest acts.  Thus, the likelihood-of-recurrence factor was irrelevant to the trial court's decision.

In the City's reply brief, for the first time, the City argues that Reyes's prior discipline was relevant to the trial court's determination whether the Commission should have sustained the dishonesty charges.  The City contends that Reyes's prior misconduct demonstrated a propensity to disobey "protocol and the law," and that he acted consistently with that propensity by knowingly falsifying his police report and probable cause

declaration. The City, however, forfeited that propensity argument by failing to raise it in the trial court or in its opening brief. (See *Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011 ["Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider"]; *High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111, fn. 2 ["New arguments may not be raised for the first time in an appellant's reply brief"].)

In any event, Reyes's prior misconduct was unrelated to dishonesty. Thus, even assuming, arguendo, evidence of his prior misconduct was admissible to support the City's new propensity theory (cf. Evid. Code, § 1101, subd. (a)), the evidence was not probative to the trial court's determination whether the Commission should have sustained the dishonesty charges.

In short, we conclude the trial court did not err by deeming Reyes's prior discipline irrelevant to its decision.

## DISPOSITION

The judgment is affirmed. Reyes is entitled to his costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.              BENDIX, J.

24